Ex parte James Barnette
MATHIS, Relator.

No. 12–91–00140–CV.

Court of Appeals of Texas,
Tyler.

Dec. 31, 1991.

Bob Whitehurst, Tyler, for relator.

Howard Britain, Tyler, for appellee.

Before RAMEY, C.J., and COLLEY and BILL BASS, JJ.

## ORIGINAL PROCEEDING

### PER CURIAM.

This is an application for a writ of *habeas corpus* in a contempt matter for failure to pay child support. On May 30, 1991 the trial judge signed an order finding Relator in contempt for twenty-one violations of child support orders and assessed punishment at six months in jail and a $500.00 fine for each violation.

#### Original Divorce Decree

Relator and Tammy Renia Mathis were divorced on June 22, 1982. The decree of divorce lists two children of the marriage: Karis Mathis, born May 6, 1979 and Cammie Mathis, born January 8, 1981. Relator was originally ordered to pay child support as follows:

> It is DECREED that James Barnette Mathis pay to Tammy Renia Mathis child support in the amount of $200.00 per month, in two installments per month of $100.00 each, with the first installment being due and payable on the 15th day of June, 1982, and a like installment being due and payable on each 15th and 1st day of the month thereafter until the child with respect to whom payments are made reaches the age of 18 years or is otherwise emancipated.

### First Motion to Enforce

On July 27, 1989, Tammy filed a motion to enforce the child support order. She alleged that Relator had failed to pay child support as ordered in the 1982 decree in the amount of $100.00 on the 1st and 15th days of every month from February 1, 1983 through July 15, 1989. She also alleged that based on Relator's past non-payment, she believed he would not make the required payments due during the pendency of the motion to enforce and asked that Relator also be subject to contempt for those failures to pay. She alleged an arrearage at the time of filing of $15,925.00.

### January 31, 1991 Contempt Order

From the record filed by Relator the next official event was the signing on January 31, 1991 of a contempt order. Judge Blake on that date signed an order finding Relator in contempt, assessing penalties therefor and suspending imposition of the penalties and placing Relator on probation. She found that Relator failed to make child support payments in the amount of $36.84 on July 15, 1984 and $100.00 on each first and fifteenth of the months starting August 15, 1984 through March 1, 1990. She specifically found him in contempt for failure to make the payments from March 1, 1989 through March 1, 1990. Relator was found to have been able to make the payments when due. An arrearage of $10,-736.84 was adjudged and six months in jail for each violation. For civil contempt, Relator was ordered jailed until he paid the arrearage to Tammy through the District Clerk, and $1,500.00 attorney's fees to Tammy's lawyer.

The criminal penalty was suspended and Relator was placed on probation conditioned upon his payment of the arrearage in installments as follows:

[B]eginning on July 1, 1990 and again on the 15th of July, 1990 and thereafter on the first and fifteenth of each and every month, [Relator] shall pay the additional sum of ONE HUNDRED AND NO/100 ($100.00) DOLLARS semi-monthly (a total of TWO HUNDRED AND NO/100 DOLLARS monthly) toward the child support arrearages as found by this Court and said sum shall be applied to the delinquent child support when paid semi-monthly until the arrearage shall be paid in full, when the monthly payments shall be reduced to the regular monthly amount of child support.

The regular monthly child support is ORDERED to be paid by [Relator] to TAMMY RENIA MATHIS in the sum of TWO HUNDRED AND NO/100 ($200.00) DOLLARS per month payable in semi-monthly installments of ONE HUNDRED AND NO/100 ($100.00) DOLLARS each on the first and fifteenth of each and every month for the support of the two (2) minor children until the date of the earliest occurrence of one of the following events:

(1) Any child reaches the age of eighteen (18) years, provided that, if the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma, the periodic child-support payments shall continue to be due and paid until the end of the school year in which the child graduates;

(2) Any child marries;

(3) Any child dies;

(4) Any child's disabilities are otherwise removed for general purposes;

(5) Any child is otherwise emancipated; or

(6) Further order modifying this child support.

Presently, pursuant to this Order, the Court states for clarification, if any is necessary, that [Relator] shall be paying TWO HUNDRED AND NO/100 ($200.00) DOLLARS per month toward the arrearage he owes as found by this Court and TWO HUNDRED AND NO/100 ($200.00) DOLLARS for regular monthly child support accruing from March 15, 1990 forward except as otherwise above provided by this Court's order.

\*      \*      \*      \*      \*      \*

IT IS ORDERED AND DECREED that all payments shall be made through the District Clerk and then remitted by

that agency to TAMMY RENIA MATHIS for the support of the children.

The January 31, 1991 order also set the matter for a hearing on April 1, 1991 to determine whether Relator was complying with the conditions of his probation. There is no record of a hearing on April 1.

## Second Motion to Enforce

On April 16, 1991, Tammy filed another motion to enforce child support order. In that motion she quotes the 1982 divorce decree child support provision and also the January 31, 1991 order as set out above. She specifically alleged that Relator had violated the "orders" in that he had failed to pay child support through the District Clerk's office to her in the amount of $100.00 on the 15th of March, 1990 and on the first and fifteenth day of every month from April 1, 1990 through April 1, 1991. She set out each date and failure to pay separately. Again she alleged that she believed Relator would continue not to pay and asked that he also be held in contempt for violations occurring during the pendency of the motion to enforce. This time a $2,000.00 arrearage was alleged.

On May 30, 1991, visiting Judge Clapp signed an order holding Relator in contempt for failure to pay court ordered child support. That order quotes the 1982 child support provisions of the original divorce decree. The order contains findings that neither of the children had reached the age of eighteen and that "for the period of March 15, 1990 to April 1, 1991 inclusive, [Relator] knew that his monthly child support payments were payable to TAMMY RENIA MATHIS through the District Clerk's Office of Smith County, Texas." The Court specifically found Relator in contempt for failure to make the required $100.00 child support payments on 21 specified dates. The court found that Relator was able to make the payments when they were due and that he had the ability to pay the arrearage on the date of the order.

Additionally, the trial court found that Relator had paid $200.00 in child support on July 3, 1990 and $300.00 on September 12, 1990. Both of those payments were made through the District Clerk's office. The trial court credited those payments against the regular $100.00 child support payments due on July 1, 1990, July 15, 1990, September 1, 1990, September 15, 1990 and October 1, 1990.

Punishment was assessed at six months in jail and $500.00 for each violation found, the jail time to run consecutively. Relator was further ordered confined until he paid the $2,000.00 arrearage, costs and the attorney fees awarded. Tammy was awarded judgment in the amount of $2,000.00 for arrearages accruing from March 15, 1990 through April 1, 1991.

## Relator's Arguments

Relator states several complaints about being adjudged in contempt and confined pursuant to the May 30, 1991 order.[1] First, he complains that the motion, original decree and contempt order are not clear and specific enough. The actual basis of this complaint is that the original decree does not say where the child support payments are to be made and the contempt order does not specify which order Relator was being held in contempt for violating. Relator argues that he was adjudged in contempt for not paying the child support through the District Clerk's office as ordered in the January 31, 1991 order, although many of the specific dates on which he was found to have not made payments fell before January 31, 1991.

The 1982 decree did not impose upon Relator an obligation to pay the child support to Tammy through the District Clerk's office. The only order contained in the record directing Relator to make the payments through the Clerk's office is the January 31, 1991 order. The May 31 order holds Relator in contempt for not making payments that accrued before that order

1. The number of specific complaints varies from four in the application for a writ of *habeas corpus,* to five "points of error" in the index of Relator's brief, to seven separate arguments supported by authority in the body of the brief. We will address the arguments contained in the brief.

was signed by the trial court and does not specifically reference the January 31, 1991 order. The trial court specifically found that Relator knew that he was to make the payments through the district clerk. Further, the record shows that as early as May 17, 1989, Relator made payments through the District Clerk's office.

It is clear that Relator was not being punished for not making his payments through the Clerk's office. The record conclusively establishes that the reason Relator was found in contempt was because he had not made the required payments at all. To permit Relator to escape the consequences of his conscious disregard of his court ordered obligation to support his children simply because the contempt order did not recite the January 31 order would be insupportable, especially since Relator knew and actually had made his several payments through the District Clerk's office before that location was specified by order.

■ Relator's second complaint is that he established that he was unable to pay the child support. A statement of facts from the hearing was filed on October 15, 1991. Relator's testimony reveals that he is employed and makes approximately $590.00 every two weeks. His total income including his current wife's wages was approximately $3,000.00 per month. The monthly expenses were paid in part by his current wife and in part by Relator. The only evidence of the amount of monthly expenses was that the electric bill was $180.00 per month and the water bill was $30.00 a month. For some period prior to July, 1990, Relator had chosen to work only part time or not at all and attend school on a full time basis. Relator was physically able to work for all but a few months during the period at issue. He testified that he had not attempted to borrow the money he owed for child support except from his current wife. He further stated that he had paid his other debts but not his child support. Inability to pay is an affirmative defense upon which the proponent has the burden of proof by a preponderance of the evidence. Tex.Fam.Code Ann.

§ 14.40(g) and (h) (Vernon Supp.1991). By whatever standard is employed, the record establishes that Relator had the ability to pay the court ordered child support in this case.

■ Relator's third attack on the contempt order is that he was not afforded a jury trial despite the fact that his cumulative punishment for the twenty-one violations totals ten years and six months in jail and a $10,500.00 fine. He argues that this violates his sixth amendment right to jury trial. In *Ex Parte Griffin*, 682 S.W.2d 261 (Tex.1984), the Supreme Court held that a party held in contempt for violating a temporary injunction, fined $104,000 ($500 for each of 208 separate violations) and sentenced to thirty days in jail was entitled to a jury trial. The decision centered on the categorization of the offense as "serious", which determination was made on the basis of the $104,000 fine. Confinement exceeding six months in jail is a serious offense for which the accused is entitled to a jury trial. *Ex Parte Sproull*, 815 S.W.2d 250, 250 (Tex.1991). In *Sproull* the Relator had been held in contempt for failure to pay court ordered child support and sentenced to over twenty-two years in jail—sixty days for each of 136 missed support payments. In that case, as here, the Relator was initially placed on probation and given the opportunity to pay the arrearage. However in that case, the Relator was not able to make any payments due to unemployment. In *Sproull* and *Griffin* the courts held that "in a contempt hearing for a *serious* offense, waiver of the right to jury trial cannot be presumed from a silent record." (emphasis in original). *Griffin*, 682 S.W.2d at 262; *Sproull*, at 250. Relator's ten year jail term and $10,500 fine establishes this contempt order as a "serious" offense thereby entitling him to a jury trial. As the Supreme Court did in *Sproull*, we conclude that Relator was entitled to a jury trial, and the record does not show a waiver of that right.

The fourth complaint about the contempt order is a variation on the first, to wit: the original decree does not specify where Relator is to make the child support pay-

ments, and therefore, it is ambiguous and cannot be enforced by contempt. For the reasons stated under our discussion of the first complaint, we find this argument insufficient to void the order of contempt.

The fifth basis for attack on the contempt judgment is based upon Relator's contention that the trial court said on the record that he could purge himself by taking certain actions and in fact the written order does not contain any purging conditions. He contends that the lack of any purging conditions in the written order in effect sentences him to jail for life. From the record it appears that Relator's counsel inquired of the Court whether Relator could purge himself and the court initially responded that he could. As was discussed in the trial court, appellant was punished for criminal contempt, not civil or coercive contempt. A purging provision is applicable only in the civil contempt context. In any event, this point is without merit because a trial court's oral assertions are overridden by the written order or judgment. In response to Relator's contention that he has been sentenced to life in prison, clearly once he serves the time assessed as punishment for criminal contempt, he would be released.

The sixth point attacks the award of judgment to Tammy for arrearages in the amount of $2,000.00. The argument made by Relator is vague. It is unclear on what basis he is claiming that the arrearage order is ambiguous and vague. The order lists twenty-one dates on which Relator was obligated to pay $100.00 to Tammy and on which he did not pay her any amount. Although the true arrearage for all of those unsatisfied payments would be $2100, it shows that the trial court was awarding judgment for the missed payments listed and covered by the contempt order. We see no fatal ambiguity in the arrearage order.

Relator's seventh attack on the contempt judgment is that he contends that the 1982 divorce decree is ambiguous and unenforceable by contempt because it does not say how much child support is to be paid when the eldest child reaches eighteen years of age. His complaints are premature. The eldest child was born in 1979 and is now twelve years old. What happens six years from now does not affect the fact that under the 1982 decree Relator was and is obligated to pay $200 per month child support. One court has held that it is the obligor's duty to return to court for a modification, upon the occurrence of an event eliminating the necessity for payment of child support for one of several children. *Gross v. Gross*, 808 S.W.2d 215, 219 (Tex.App.—Houston [14th Dist.] 1991, no writ history).

In summary, we find that Relator was denied his right to a jury trial, and for that reason alone the order adjudging him in contempt is void. Relator is ordered discharged.